**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____

EDENS & AVANT, INC. and E&A )
NORTHEAST LIMITED PARTNERSHIP, )
                             )
         Plaintiffs,          )      CIVIL ACTION
                             )
v.                                )      NO. 05-10340 JLT
                             )
SINGLE SOURCE ROOFING CORP.; )
EAGLE RIVET ROOF SERVICE )
CORPORATION; and J.P. AND SONS )
ROOFING, INC.                    )
                             )
         Defendants,        )
                             )
v.                                )
                             )
EAGLE RIVET ROOF SERVICE )
CORPORATION                  )
                             )
         Third Party Defendant     )
_____

## AMENDED COMPLAINT

1.      Plaintiff, Edens & Avant, Inc. ("E&A") is a corporation, organized and existing under the laws of the State of South Carolina, with a principal place of business at of 1901 Main Street, Suite 900, Columbia, South Carolina.

2.      Plaintiff, E&A Northeast Limited Partnership ("E&A Northeast") is a limited partnership, organized and existing under the laws of the State of Delaware, with a principal place of business at 1901 Main Street, Suite 900, Columbia, South Carolina.

3.      Defendant, SingleSource Roofing Corp. ("SingleSource") is a corporation, organized and existing under the laws of the Commonwealth of Pennsylvania, with a principal

place of business at 1200 McKee Avenue, McKees Rocks, Allegheny County, Pennsylvania 15136.

4.      Defendant, Eagle Rivet Roof Service Corporation ("Eagle Rivet") is a corporation, organized and existing under the laws of the State of Connecticut, with a principal place of business located at 1030 New Britain Avenue, West Hartford, Connecticut 06110

5.      Defendant, J.P. and Sons Roofing, Inc. ("J.P. and Sons") is a corporation, organized and existing under the laws of the Commonwealth of Massachusetts, with a principal place of business located at 13 Whipple Street, Lowell, Massachusetts 01852.

6.      E&A Northeast owns and operates two (2) shopping centers known as Acton Plaza One and Acton Plaza Two ("the Buildings") located in Acton, Middlesex County, Massachusetts.  The shopping centers are managed by E&A.

7.      SingleSource is a business engaged in the design, manufacture, specification, sales, distribution, installation, and servicing of rubber membrane roofing systems, and markets its products and services nationwide, including within the Commonwealth of Massachusetts.

8.      In 1999, after frequent problems with leaking in the Buildings, E&A and E&A Northeast determined that the rubber membrane roofing systems on the buildings required substantial repair or replacement.

9.      E&A, as the manager of the buildings, thereafter contacted SingleSource to inquire about the suitability of its product for the Buildings.  After receiving quotes for the scope of the work proposed by SingleSource, E&A Northeast contracted with SingleSource to replace the roofing systems on the Buildings at a cost of $73,135.00 for Acton Plaza One, $215,650.00 for a portion of Acton Plaza Two (the "Ames Roof"), and $52,275 for another portion of Acton Plaza Two.  True and correct copies of the "Acceptance and Agreement for Professional

-2-

Services" between the parties for the first two portions of the aforementioned roofs are attached hereto as Exhibits "A" and "B" respectively and incorporated herein by reference. Although E&A is not in possession of a copy of any the agreement for the final portion of the aforementioned roofs, a copy of the invoice to E&A by SingleSource for that portion is attached hereto as Exhibit "C."

10.     SingleSource replaced each of the roofs on the Buildings in early 1999 with a mechanically fastened rubber membrane roofing system known as the "SingleSource ULTRA-NP" system.

11.     In replacing the roofs, SingleSource utilized a fastening system in which thousands of fasteners spread throughout the roofs were employed to attach the membrane to the Buildings.

12.     Upon the completion of the roofing project on Acton Plaza One, SingleSource issued twenty (20) year warranties for both the roofing system and membrane to E&A. True and correct copies of "Guarantee 07373" and "Membrane Material Warranty" relating to Acton Plaza One are attached hereto as Exhibits "D" and "E" respectively and incorporated herein by reference.

13.     Upon the completion of the roofing project on the Ames Roof at Acton Plaza Two, SingleSource issued twenty (20) year warranties for both the roofing system and membrane to E&A. True and correct copies of "Guarantee 07370" and "Membrane Material Warranty" relating to Acton Plaza Two are attached hereto as Exhibits "F" and "G" respectively and incorporated herein by reference.

14.     Upon the completion of the roofing project on the remainder of the roof at Acton Plaza Two, SingleSource issued twenty (20) year warranties for both the roofing system and

membrane to E&A.  True and correct copies of "Guarantee 7379" and "Membrane Material Warranty" relating to the remainder of the roof at Acton Plaza Two are attached hereto as Exhibits "H" and "I" respectively and incorporated herein by reference.

15.    In late 2003, only approximately four (4) years after the installation of the SingleSource roofing systems on the Buildings, and well within the respective warranty periods, both Buildings began to experience significant and persistent leaks.

16.    Upon investigation, it was discovered that SingleSource's membranes had failed in the vicinity of the fasteners used to attach the membrane to the Buildings.  Specifically, the corners of many of the fasteners had punctured the membranes, thereby permitting water to infiltrate the roofing systems.

17.    The roofing systems cannot be properly repaired by patching and/or reinforcing the membrane in the area of the tears caused by the fasteners.  Rather, the roofing systems need to be completely replaced and the SingleSource fasteners completely removed from the Buildings.

18.    Despite several requests, SingleSource has refused and continues to refuse to repair the roofs in such a manner so as to remedy the persistent leaking problems and the failure of the membrane and fastening systems.

19.    SingleSource has further refused and continues to refuse to replace the roofs in their entirety to remedy the failures of the roofing systems.

20.    As a direct and proximate result of the failures of the roofs, E&A and E&A Northeast will be forced to incur significant damages and expenses to repair and/or replace the roofing systems on the Buildings, as well as replace and/or repair the underlying roof decking, which is believed to have deteriorated as a result of the failures of the roofing systems.  Such

damages and expenses, given the catastrophic nature of the failure of the SingleSource roofing

systems on the Buildings, will exceed the sum or value of $75,000.00, exclusive of interest and

costs.  Accordingly, this Court has subject matter jurisdiction over the parties pursuant to 28

U.S.C. §1332 and venue is proper in this forum pursuant to 28 U.S.C. §1391(a)(2).  This Court

also has personal jurisdiction over SingleSource given its actions relating to the roofing systems

on the Buildings that are the subject of this Complaint.

## COUNT I – BREACH OF CONTRACT

*E&A Northeast*
*vs.*
*Single Source*

21.    The averments of Paragraphs 1 through 20 of this Complaint are incorporated by

reference herein as if set forth at length.

22.    E&A Northeast contracted with SingleSource for the design, supply, and

installation of three (3) roofing systems on the Buildings which would provide substantially

watertight protection for the interior of the Buildings for a period of at least twenty (20) years at

a cost of $341,060.

23.    SingleSource has breached the aforementioned contracts by designing, supplying,

and installing three (3) defective roofs which have not complied with the terms of the contract

between the parties, including in the following particulars:

      a.    In failing to manufacture, design, specify, install and repair
the roofing systems properly in order to prevent the roofing
system from developing further leaks;

      b.    In failing to manufacture, design, specify, install and repair
the roofing systems in such a manner that they would not
prematurely deteriorate;

c.  In failing to instruct their authorized agents as to the proper method of installation and/or repair for the roofing systems so that they would not leak;

d.  In manufacturing, designing, specifying, selling and installing roofing systems that prematurely deteriorate under normal weather conditions;

e.  In manufacturing, designing, specifying, selling, and installing roofing systems that fail to keep water out of the Buildings;

f.  In failing to warn E&A Northeast that the roofing systems would prematurely deteriorate, necessitating their replacement well in advance of their anticipated lifespan;

g.  In manufacturing, designing specifying, selling and installing roofing systems that prematurely deteriorate, permitting water to come in contact with the roof decking and building interiors, and damage the decking and interiors;

h.  In failing to warn E&A Northeast that the roofing systems would prematurely deteriorate, permitting water to come in contact with the roof decking and building interiors, and damage the decking and interiors;

i.  In manufacturing, designing specifying, selling and installing roofing systems that permit the fasteners to improperly penetrate the membrane;

j.  In manufacturing, designing specifying, selling and installing roofing systems with fasteners and membrane which prematurely fail;

k.  In manufacturing, designing specifying, selling, installing, and/or recommending roofing systems to E&A Northeast which were improper for its roofing needs;

l.  In manufacturing, designing specifying, selling, installing, and/or recommending roofing systems to E&A Northeast

-6-

when it knew or should have known that such systems were not proper for the Buildings;

m.    In failing to properly inspect E&A Northeast's roofs to determine the appropriate roofing systems for the Buildings.

n.    In failing to warn E&A Northeast that shoveling or removing snow could damage the SingleSource roofing systems.

25.    In addition, Single Source failed to furnish a "Twenty year Membrane System Warranty and a twenty year Membrane Material Warranty in the owner's name" as required by the agreement among the parties.

26.    As a direct and proximate result of these breaches of contract by SingleSource, E&A Northeast has sustained, and will sustain, damages as set forth in this Complaint.

## COUNT II - BREACH OF EXPRESS WARRANTY

*E& A and E&A Northeast*
*vs.*
*Single Source*

27.    The averments of Paragraphs 1 through 26 of this Complaint are incorporated by reference as if set forth at length.

28    Pursuant to the contracts between E&A Northeast and SingleSource, SingleSource was to issue a "Twenty year Membrane System Warranty and a twenty year Membrane Material Warranty in the owner's name."

29    The warranties issued by SingleSource and attached hereto were in fact issued in the name of E&A, but were intended to benefit E&A Northeast as well.

30.    Plaintiffs properly and timely notified SingleSource during the respective warranty periods of the leaks and other defects in the roofing systems as set forth in this Complaint.

31.    SingleSource breached the express warranties in failing to repair the leaks in the roofing systems on the Buildings in accordance with the terms of the warranties despite repeated requests from Plaintiffs.

32.    SingleSource breached the express warranties in failing to replace the roofing systems in accordance with the terms of the warranties upon being notified that the current roofing systems had failed, could not be repaired, and needed replacement.

33.    As a direct and proximate result of these breaches of express warranties by SingleSource, Plaintiffs have sustained, and will sustain, damages as set forth in this Complaint.

## COUNT III – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY UNDER M.G.L. 106, §2-314

*E&A Northeast*
*vs.*
*Single Source*

34.    The averments of Paragraphs 1 through 33 of this Complaint are incorporated by reference as if set forth at length.

35.    SingleSource impliedly warranted that the roofing systems would be merchantable at the time they were sold.  The roofing systems were not merchantable in that they were not fit for the ordinary purpose for which they were sold as noted herein.

36.    The roofing systems were defective and unreasonably dangerous in that they were designed in such a manner such that they were not safe for their intended use.  As such, water

was able to penetrate the roofs, causing damage to the roof decking, internal structure and contents of the building.

37.     The roofing systems were defective and unreasonably dangerous in that they were manufactured in such a manner that water was able to penetrate the roof.  As such, water was able to penetrate the roofs, causing damage to the roof decking, internal structure and contents of the building.

38.     The roofing systems were defective and unreasonably dangerous in that SingleSource failed to give adequate and complete warnings to Plaintiffs that the roofing systems would likely deteriorate and allow water to penetrate the roofs.  As such, water was able to penetrate the roofs, causing damage to the roof decking, internal structure and contents of the building.

39.     The roofing systems were defective and unreasonably dangerous in that SingleSource failed to give adequate and complete warnings to Plaintiffs that the roofing systems could be damaged as a result of shoveling or removing snow from them., thereby allowing water to penetrate the roofs.

40.     As a direct and proximate result of these breaches of the implied warranty of merchantability by SingleSource, E&A Northeast has sustained, and will sustain, damages as set forth in this Complaint.

## COUNT IV-BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE UNDER M.G.L. 106, §2-315

*E&A Northeast*
*vs.*
*Single Source*

41.     The averments of Paragraphs 1 through 40 of this Complaint are incorporated by reference as if set forth at length.

42.     E&A Northeast informed SingleSource, through its employees and agents, of the particular purpose for which the roofing systems were to be used.  As a result, SingleSource knew or had reason to know that E&A Northeast was relying on SingleSource's skill or judgment to furnish appropriate goods.

43.     E&A Northeast relied on SingleSource's skill or judgment in purchasing SingleSource's roofing systems. SingleSource impliedly warranted that the roofing systems would be fit for the particular purpose for which they were to be used at the time they were manufactured, sold, supplied, and installed.   The roofing systems were defective and unreasonably dangerous as previously stated herein and did not meet the purposes told to SingleSource by E&A Northeast's agents and employees.

44.     As a direct and proximate result of this breach of the implied warranty of fitness for a particular purpose by SingleSource, E&A Northeast has sustained, and will sustain, damages as set forth in this Complaint.

### COUNT V – NEGLIGENCE

***E&A Northeast***
***vs.***
***Single Source***

45.     The averments of Paragraphs 1 through 44 of this Complaint are incorporated by reference as if set forth at length.

46.     The damages set forth in this Complaint are the direct and proximate result of the negligent acts and/or omissions of SingleSource, generally, and in the following particulars:

a.     In failing to repair the roofing systems properly and prevent the roofing system from developing further leaks;

b.     In failing to repair the roofing systems in such a manner that it would not prematurely deteriorate;

c.     In failing to instruct their authorized agents as to the proper method of installation and/or repair for the roofing systems so that they would not leak;

d.     In manufacturing, designing, specifying, and installing roofing systems that prematurely deteriorate under normal weather conditions;

e.     In manufacturing, designing, specifying, and installing roofing systems that fail to keep water out of the buildings;

f.     In failing to warn E&A Northeast that the roofing systems would prematurely deteriorate, necessitating their replacement;

g.     In manufacturing, designing, specifying, and installing roofing systems that prematurely deteriorate, permitting water to come in contact with the roof decking and building interiors, and damage the decking and interiors;

h.     In failing to warn Plaintiffs that the roofing systems would prematurely deteriorate, permitting water to come in contact with the roof decking and building interiors, and damage the decking and interiors;

i.     In manufacturing, designing, specifying, and installing roofing systems that permit the fasteners to improperly penetrate the membrane;

j.     In manufacturing, designing, specifying, and installing roofing systems with fasteners and membrane which prematurely fail;

k.     In manufacturing, designing, specifying, installing, and/or recommending roofing systems to E&A Northeast which were improper for its roofing needs;

-11-

l.      In manufacturing, designing, specifying, installing, and/or recommending roofing system to E&A Northeast when it knew or should have known that such systems were not proper for the Buildings;

m.      In failing to properly inspect E&A Northeast's roofs to determine the appropriate roofing systems for the Buildings.

n.      In failing to warn E&A Northeast that shoveling or removing snow could damage the SingleSource roofing systems.

47.    As a direct and proximate result of these negligent acts by SingleSource, Plaintiffs have sustained, and will sustain, damages as set forth in this Complaint.

## COUNT VI - FRAUD

*E&A Northeast*
*vs.*
*Single Source*

48.    The averments of Paragraphs 1 through 47 of this Complaint are incorporated by reference as if set forth at length.

49.    In specifying, selling, distributing, and installing its rubber membrane roofing systems to Plaintiffs, agents and employees of SingleSource made the following material fraudulent representations to E&A and E&A Northeast:

a.      That the SingleSource membrane fastening system was a tested and proven system which would result in fewer leaks in the roofing systems;

b.      That its unique fastening system was superior in quality and performance to others available on the market;

      c.        That the "long-term performance of the ULTRA-NP [fastening] system is understandably superior;"

      d.        That the ULTRA-NP [fastening] system "is the most successful fastening technology ever patented;"

      e.        That its membrane was the "most proven, time tested, weather resistant single-ply membrane formula" available in the roofing industry;

50.     At the time such statements and representations were made by SingleSource through its agents and employees, SingleSource knew or had reason to know that such statements were false.

51.     At the time such statements and representations were made by SingleSource through its agents and employees, SingleSource intended that Plaintiffs would rely on the statements and representations in deciding to purchase its roofing system over others available on the market.

52.     In fact, is believed and therefore averred that SingleSource had actual knowledge that its fastening system was inherently defective, was not superior in quality and performance to other available on the market, and was causing roofs utilizing such fastening systems to prematurely fail and leak.

53.     Plaintiffs justifiably relied upon the aforementioned fraudulent representations of SingleSource in deciding to purchase and install the SingleSource roofing system over other roofing systems available in the marketplace.

54.     As a direct and proximate result of the aforementioned fraudulent representations of SingleSource, Plaintiffs suffered damages as set forth more fully in this Complaint.

## COUNT VII – M.G.L. 93A, SECTION 11

*E& A and E&A Northeast*
*vs.*
*Single Source*

55.     The averments of Paragraphs 1 through 54 of this Complaint are incorporated by reference as if set forth at length.

56.     SingleSource, E&A, and E&A Northeast are all engaged in trade or commerce.

57.     The misrepresentations made by SingleSource to E&A and E&A Northeast set forth in paragraphs 44(a)-(e) occurred primarily and substantially within the Commonwealth of Massachusetts and were unfair and deceptive trade practices which were material, which were undertaken willfully and knowingly, and which caused proximate damage to Plaintiffs in violation of M.G.L. c.93A, §11.

58.     The violations of express and implied warranties by SingleSource as set forth herein occurred primarily and substantially within the Commonwealth of Massachusetts and were unfair and deceptive trade practices which were material, which were undertaken willfully and knowingly, and which caused proximate damage to Plaintiffs in violation of M.G.L. c.93A, §11.

## COUNT VIII – NEGLIGENCE

*E&A Northeast*
*vs.*
*Eagle Rivet and J.P. and  Sons Roofing, Inc.*

59.     The averments of Paragraphs 1 through 58 of this Complaint are incorporated by reference as if set forth at length.

60.     On or about December 15, 2003, Eagle Rivet was retained by Edens & Avent, Inc. to remove snow from the roofs of Acton Plaza One and Acton Plaza Two.

-14-

61.    Upon information and belief, Eagle Rivet subcontracted the snow removal work to J.P. and Sons.

62.    Agents and/or employees of J.P. and Sons removed the snow from the roofs in such a manner as to cause damage to the rubber membrane roofing systems described herein.

63.    The damages set forth in this Complaint are, in part or in total, the direct and proximate result of the negligent acts and/or omissions of Eagle Rivet and J.P. and Son, generally, and in the following particulars:

    a.    In failing to remove the snow from the roofs in a manner which would not damage the rubber membrane roofing systems;

    b.    In removing snow from the roofing systems in such a manner as to create holes in the rubber membrane of the roofing system;

    c.    In removing snow from the roofing systems in such a manner as to cause the roofing system to leak;

    d.    In removing snow from the roofing system with improper tools and/or shovels;

    e.    In failing to instruct their agents and employees as to the proper method for removing snow from the roofing systems;

    f.    In failing to warn E&A Northeast that their snow removal methods could cause holes in the roofing system, leakage, and the need for premature replacement of the systems;

    g.    In removing snow from the roofs in such a manner as to cause cuts, tears, and "scoring" in the rubber membrane, including cuts, tears, and "scoring" in the vicinity of the numerous fasteners employed in the roofing systems.

64.     As a direct and proximate result of these negligent acts by Eagle Rivet and J.P. & Sons, jointly and severally, Plaintiffs have sustained, and will sustain, damages as set forth in this Complaint.

WHEREFORE, Plaintiffs, Edens & Avant, Inc. and E&A Northeast Limited Partnership respectfully requests the following with respect to the allegations in this Complaint:

(1) that the Court enter judgment for all appropriate damages on Counts I-VII herein, plus prejudgment interest and post judgment interest, attorney's fees and costs;

(2) that any judgment entered with respect to Count VII be doubled or trebled; and

(3) that the Court award such other and further relief as it may deem just and proper.

Respectfully submitted,

EDENS & AVANT, INC..

By its attorneys

s/ Leonard H. Freiman
Leonard H. Freiman (BBO #560233)
GOULSTON & STORRS, P.C.
400 Atlantic Avenue
Boston, Massachusetts 02110-3333
(617) 482-1776

OF COUNSEL:

Steven B. Silverman, Esquire
Christopher W. Cahillane, Esquire
TUCKER ARENSBERG, P.C.
1500 One PPG Place
Pittsburgh, PA 15222
(412) 566-1212

## <u>JURY DEMAND</u>

Plaintiff respectfully requests trial by jury on all issues so triable as stated herein.

s/ Leonard H. Freiman
Leonard H. Freiman (BBO #560233)
GOULSTON & STORRS, P.C.
400 Atlantic Avenue
Boston, Massachusetts  02110-3333
(617) 482-1776

Dated: May 17, 2006

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the within Amended Complaint was served on all parties of record by deposition same in the United States Mail, first class postage prepaid on the 17th day of May 2006 addressed as follows:

> Peter Montgomery, Esquire
> Brody Hardoon Perkins & Kesten LLP
> One Exeter Plaza, 12th Floor
> Boston, MA 02116

> Michelle Schaffer, Esquire
> Campbell, Campbell, Edwards & Conroy
> One Constitution Plaza  -  Third Floor
> Boston, MA  02129

> s/ Leonard H. Freiman_____
> Leonard H. Freiman (BBO #560233)

LIT:386008-1 021611-118986

## ACCEPTANCE AND AGREEMENT
### FOR PROFESSIONAL SERVICES

This Agreement made this 14th day of April, 1999, by and between Edens & Avant Properties Limited Partnership as Agent for E&A Northeast Limited Partnership, Post Office Box 528, Columbia, South Carolina 29202, and SingleSource Roofing Corporation ("Contractor") at 1220-E Kennestone Circle, Marietta, Georgia 30066.

WITNESSETH:  Whereas Agent desires to contract with Contractor to perform work or services at the shopping center known as Acton Plaza Two (out-parcel building) located in Acton, Massachusetts.

WHEREAS,  Contractor is engaged in the business of providing professional services, Agent hereby accepts Contractor's proposal (attached as *Exhibit A*) for services listed and subject to the provisions below:

Contractor to provide labor, materials, and services as per attached proposal, which includes a Scope of Work, dated February 17, 1999. The Contractor is also responsible for furnishing a weekly status report (attached as *Exhibit B*). The contract includes but is not limited to:

- Ray Weston (Edens & Avant) and Peter Engeian (Samuels & Associates) will be notified by fax and phone on the day work is started.
- A weekly status report (attached as *Exhibit B*) will be faxed to Ray Weston, Larry Wheeler (Edens & Avant), and Peter Engeian each Friday and will include what work was performed, who was on the job, how many days the workers were on the job, and if the completion date is still obtainable.
- Use a minimum of 3" seams.
- There will be a minimum of 9" of fully adhered roof from the perimeter at parapet walls.
- There will be a minimum of 18" of fully adhered roof at gravel stop and gutter lines.
- The roofing system to be used is the one manufactured by SingleSource Roofing Corporation.
- Removal and disposal of rooftop debris.
- New treated wood, pipe, and equipment supports.
- Cleaning of rooftop drains and replacement of missing drain screens.
- Emergency EPDM repair kit and training for Property Manager.
- Disposal of all debris created by this work.
- Furnish a 20/20 Warranty: Twenty year Membrane System Warranty and a twenty year Membrane Material Warranty in the owner's name.

Contractor to furnish Owner a written guaranty covering his work, for a minimum of one (1) year (or longer as provided in the trade specifications) from date of substantial completion, in a form acceptable to Owner.

PRICE:  Agent and Contractor hereby agree to a price of $73,135.00.

PAYMENT: Contractor agrees to submit invoices to reach Agent by the 25th of the month for payment to be made by the Agent on the 15th of the following month, provided a Waiver of Lien is submitted and all warranties, if applicable, delivered.  Contractor to provide Agent with current Certificate of Insurance.

START DATE:  Contractor agrees to start on or before April 14, 1999, and to complete all services on or before within 45 days of start date, unless notification and approvals are secured (in writing) from Agent, time being of the essence.

WARRANTY,  LIABILITY,  REPRESENTATION OF AGENT:  Contractor shall perform Services for Agent in a professional manner, using the same degree of care and skill ordinarily exercised by and consistent with the standards of competence practiced in the locality of the Project.  In the event any portion of the Services fails to comply with this warranty obligation and Contractor is promptly notified in writing, Contractor will promptly perform such portion.



EXHIBIT

A

**INSURANCE, SAFETY, PERMITS:** Contractor shall maintain at its own expense the following insurance subject to normal industry exclusions: (1) Workmen's Compensation Insurance for statutory obligation imposed by Workmen's Compensation laws; Employer's Liability Insurance with a limit of not less than $100,000.00 per accident. (2) Comprehensive Automobile Liability with limits of not less than $300,000.00. (3) General Liability Insurance with limits of not less than $500,000.00. Certificates may be required to be issued upon request and prior to the start of work, identifying details and limits of coverage. With respect to the performance of Services, Contractor shall take safety precautions required by federal, state and local laws, rules and regulations, statutes or ordinances. Contractor shall obtain all permits and licenses applicable to the work or services being performed.

**TERMINATION OF AGREEMENT:** This Agreement may be terminated by either party upon seven days' written notice in the event of substantial failure by the other party to perform in accordance with the terms hereof.

**IN WITNESS WHEREOF,** the parties have caused this Agreement to be executed by their duly authorized representative.

CONTRACTOR:
SingleSource Roofing Corporation

BY: _____

ITS: *Executive Vice President*

WITNESS: _____

AGENT:
Edens and Avant Properties Limited Partnership as agent for E&A Northeast Limited Partnership

BY: _____

ITS: Vice President, Construction Administration

WITNESS: _____

This Agreement made this 17th day of February, 1999, by and between Edens & Avant Properties Limited Partnership as Agent for E&A Northeast Limited Partnership, Post Office Box 528, Columbia, South Carolina 29202, and SingleSource Roofing Corporation ("Contractor") at 1220-E Kennestone Circle, Marietta, Georgia 30066.

WITNESSETH:  Whereas Agent desires to contract with Contractor to perform work or services at the shopping center known as Acton Plaza, for the Ames Store roof, located in Acton, Massachusetts.

WHEREAS,  Contractor is engaged in the business of providing professional services, Agent hereby accepts Contractor's proposal (attached as *Exhibit A*) for services listed and subject to the provisions below:

Contractor to provide labor, materials, and services as per attached proposal dated February 9, 1999, and letter dated February 10, 1999 (attached as *Exhibit B*). The contract includes but is not limited to:

- Ray Weston (Edens & Avant) and Peter Engeian (Samuels & Associates) will be notified by fax and phone on the day work is started.
- A weekly status report (attached as *Exhibit C*) will be faxed to Ray Weston and Peter Engeian each Friday and will include what work was performed, who was on the job, how many days the workers were on the job, and if the completion date is still obtainable.
- Use a minimum of 6" seams.
- There will be a minimum of 18" of fully adhered roof from the perimeter of the parapet walls, in lieu of 6".
- There will be 24" or greater of fully adhered roof at the corner.
- The roofing system to be used is the one manufactured by Firestone.
- Removal and disposal of rooftop debris.
- New treated wood, pipe, and equipment supports.
- Cleaning of rooftop drains and replacement of missing drain screens.
- Emergency EDPM repair kit and training for Property Manager.
- Disposal of all debris created by this work.

Contractor to furnish Owner a written guaranty covering his work, for a minimum of one (1) year (or longer as provided in the trade specifications) from date of substantial completion, in a form acceptable to Owner.

PRICE:  Agent and Contractor hereby agree to a price of $215,650.00.

PAYMENT:  Contractor agrees to submit invoices to reach Agent by the 25th of the month for payment to be made by the Agent on the 15th of the following month, provided a Waiver of Lien is submitted and all warranties, if applicable, delivered. Contractor to provide Agent with current Certificate of Insurance.

START DATE:  Contractor agrees to start on or before February 26, 1999, and to complete all services within 35 days of start date, unless notification and approvals are secured (in writing) from Agent, time being of the essence.

WARRANTY, LIABILITY, REPRESENTATION OF AGENT:  Contractor shall perform Services for Agent in a professional manner, using the same degree of care and skill ordinarily exercised by and consistent with the standards of competence practiced in the locality of the Project. In the event any portion of the Services fails to comply with this warranty obligation and Contractor is promptly notified in writing, Contractor will promptly perform such portion.

INSURANCE, SAFETY, PERMITS:  Contractor shall maintain at its own expense the following insurance subject to normal industry exclusions: (1) Workmen's Compensation Insurance for statutory obligation imposed by Workmen's Compensation laws; Employer's Liability Insurance with a limit of not less than $100,000.00 per accident. (2) Comprehensive Automobile Liability with limits of not less than $300,000.00. (3) General Liability Insurance with limits of not less than $500,000.00. Certificates may be required to be issued upon request and prior to the start of work, identifying details and limits of coverage. With respect to the performance of Services, Contractor shall take

**EXHIBIT**

*B*

safety precautions required by federal, state and local laws, rules and regulations, statutes or ~~ances. Contractor shall ob~~ all p~~ and ~~sed applica~~ to ~~ he ~~ or services ~~ to perform.

TERMINATION OF AGREEMENT: This Agreement may be terminated by either party upon seven days' written notice in the event of substantial failure by the other party to perform in accordance with the terms hereof.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their duly authorized representative.

CONTRACTOR:
SingleSource Roofing Corporation

AGENT:
Edens and Avant Properties Limited Partnership as agent for E&A Northeast Limited Partnership

BY: _____

BY: _____

ITS: _____

ITS: _____ Vice President, Development

WITNESS: _____

WITNESS: _____ Christie Terrell

# SingleSource Roofing Corporation

Invoice No. **14223**

1200 McKee Avenue
McKees Rocks, PA  15136
1-800-777-6610 fax

## *INVOICE*

### Customer

| | |
|---|---|
| Name | Edens & Avant, Inc. |
| Address | 900 National Bank Plaza |
| City | Columbia |
| Attention: | Ray Weston, Jr. |

State SC    ZIP 29202

| | |
|---|---|
| Date | 5/14/99 |
| P.O. No. | |
| Terms | Upon Receipt |
| FOB | Final |

### Ship to:

| | |
|---|---|
| Name | Edens & Avant, Inc. |
| Address | Main Street |
| City | Acton |
| Attention: | Ray Weston, Jr. |

State MA    ZIP 30071

| Description | TOTAL |
|---|---|
| Payment due for completion of work, as per contract dated March 24, 1999. | |
| Contract Amount | $52,274.00 |
| Less Deposit | ($26,137.00) |
| Less Progress | ($23,523.30) |
| Balance Due | $2,613.70 |
| SubTotal | $2,613.70 |
| Shipping & Handling | |
| Taxes | |
| TOTAL | $2,613.70 |

**Payment Details**

○ Check No. _____

○ Other _____

Office Use Only

884-39

**EXHIBIT**

C

PRODUCED BY
SINGLESOURCE

00231



**SingleSource** ROOFING

# MEMBRANE SYSTEMS WARRANTY

Owner: Edens & Avant, Inc.

Address of Building: Acton Plaza One Main Street Acton MA

Date of Warranty Coverage: May 8, 1999

Approved By: H. McKown          Guarantee #: 07373

For a period of Twenty (20) years commencing from the start date of warranty coverage indicated above, Single Source Roofing Corporation ("Single Source Roofing") guarantees to the Building Owner ("Owner") above ... subject to the terms, conditions and limitations stated herein. Single Source Roofing will repair any leaks ... by workmanship or Single Source Roofing supplied materials in the Membrane Roofing System at the above building. Single Source Roofing's repair obligations over the life of this guarantee are limited to the Owner's original cost of the Membrane Roofing System installation.

## TERMS, CONDITIONS, LIMITATIONS

1. Owner shall provide Single Source Roofing with written notice within thirty (30) days of the discovery of any leaks in the roofing system.

2. If upon inspection, Single Source Roofing determines that the leaks in the roofing system are caused by defects in the Membrane Roofing System material or workmanship of the Single Source Roofing Installation Team (except as provided in paragraphs No. four (4) and No. five (5)), Owner's remedies and Single Source Roofing's liability are limited to Single Source Roofing's repair of the leak subject to the cost limitation set forth above.

3. If upon inspection, Single Source Roofing determines that the leak is excluded under the Terms, Conditions, Limitations set forth below, inspection and repair costs shall be paid by the Owner. Failure by Owner to pay for these costs shall render this Membrane Systems Warranty null and void.

4. This Guarantee shall not be applicable if, in the sole judgement of Single Source Roofing any of the following shall occur:

   (a) The Membrane Roofing System is damaged by natural disasters, including, but not limited to, lightning, gales, hurricanes, tornadoes and earthquakes; or,

   (b) The Membrane Roofing System is damaged by any acts of negligence, accidents, or misuse, including, but not limited to, vandalism, civil disobedience, or acts of war; or,

   (c) Metal work or other material not furnished by Single Source Roofing used in the roofing system and causes leaks.

5. This Guarantee shall be null and void if in the sole judgement of Single Source Roofing any of the following shall occur:

   (a) If, after installation of the Membrane Roofing System by a Single Source Roofing Installation Team, there are any alterations or repairs made on or through the roof or objects such as, but not limited to, structures, fixtures, or utilities are placed upon or attached to the roof without first obtaining written authorization from Single Source Roofing; or,

   (b) Failure by the Owner or lessee to use reasonable care in maintaining the roof; or,

   (c) Failure to comply with every term or condition stated herein.

6. During the term of this Guarantee, Single Source Roofing, its agents or employees, shall have free access to the roof during regular business hours. In the event that roof access is limited due to security or other restrictions, Owner shall reimburse Single Source Roofing for all reasonable costs incurred during inspection and/or repair of the roofing system which are due to delays associated with said restrictions.

7. Single Source Roofing shall have no obligation under the Guarantee until all bills for installation, supplies and service have been paid in full.

8. Single Source Roofing's failure at any time to enforce any of the terms or conditions stated herein shall not be construed to be a waiver of such provision.

9. This guarantee supersedes and is in lieu of any and all other expressed guarantees that are in conflict with the terms and conditions stated herein.

**YOU AGREE SINGLE SOURCE ROOFING ASSUMES NO LIABILITY FOR CONSEQUENTIAL DAMAGES OF ANY KIND WHICH RESULT FROM THE USE OR MISUSE OF THE MEMBRANE ROOFING SYSTEM. THIS IS THE ENTIRE GUARANTEE AGREEMENT AND THERE ARE NO OTHER GUARANTEES OR WARRANTIES EXPRESSED OR IMPLIED.**

SINGLE SOURCE ROOFING CORPORATION

By: Shirley Simpson

Authorized Signature: _Shirley Simpson_

Title: National Service Representative

Date of Issue: May 18, 1999

NATIONAL HEADQUARTERS: 1200 McKee Avenue, McKees Rocks, PA 15136

**EXHIBIT**

D

EA 0049



## MEMBRANE MATERIAL WARRANTY

...... to the following terms and conditions, Single Source Roofing Corporation, (SELLER) warrants to the Buyer that the rubber membrane material (MEMBRANE) sold to the Buyer will be free from manufacturing defects at the time of its delivery to the job site.

..pon inspection by the Seller, the Membrane evidences manufacturing defects, Seller's liability and Buyer's remedies are limited, at Seller's option, to the repair or replacement of the defective Membrane at the F.O.B. point in the original contract of sale.

Seller further warrants that the Membrane material will not prematurely deteriorate to the point of failure because of weathering for a period of Twenty (20) years from the date of it properly maintained and used for the purpose for which the Seller intended.

Buyer shall give Seller notice of a claim under this warranty within thirty (30) days of discovering the premature deterioration of the Membrane.

.. .. inspection by the Seller, the Membrane shows premature deterioration because of weathering within the Twenty (20) year period stated herein, Seller's liability and Buyer's remedies are limited at Seller's option to the providing of repair material for the original  brane or credit to be applied towards the purchase of a new Membrane, the value of  .. remedies being determined by the Seller based upon the number of remaining months of the unexpired warranty used to pro-rate at the current prices for the Membrane. The maximum pro-rated value allowed by Seller for repair or credit shall not exceed the original  the purchase price.

This warranty refers to the Membrane material only. Flashing, adhesives and other accessories contained in a membrane system are not covered by this warranty.

NO REPRESENTATIVE OF THE SELLER HAS AUTHORITY TO MAKE ANY REPRESENTATIONS OR PROMISES EXCEPT AS STATED HEREIN.

. ... .. RE NO WARRANTIES EITHER EXPRESSED OR IMPLIED, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, WHICH EXTEND BEYOND THE WARRANTIES CONTAINED IN THIS DOCUMENT, SINGLE SOURCE ROOFING SHALL  .. .. BE LIABLE FOR ANY INCIDENTAL, CONSEQUENTIAL OR OTHER DAMAGES, INCLUDING, .. '.T NOT LIMITED TO, LOSS OF PROFITS OR DAMAGES TO THE STRUCTURE OR ITS CONTENTS ARISING UNDER ANY THEORY OF LAW WHATSOEVER.

SINGLE SOURCE ROOFING CORPORATION

By: Shirley Simpson

AUTHORIZED SIGNATURE: Shirley Simpson

TITLE: National Service Representative

DATE OF ISSUE: May 18, 1999

NATIONAL HEADQUARTERS: 1200 McKee Avenue, McKees Rocks, PA 15136

**EXHIBIT**

E

EA 0050

# SingleSource
### R O O F I N G

## MEMBRANE SYSTEMS WARRANTY

Building Owner __Edens & Avant, Inc.__

Address of Building __Ames Store 297 Main Street Acton, MA__

Start Date of Warranty Coverage __April 30, 1999__

Roof Approved By __H. McKown__          Guarantee # __07370__

For a period of __Ten__ (10) years commencing from the start date of warranty coverage indicated above, Single Source Roofing Corporation ("Single Source Roofing") guarantees to the Building Owner ("Owner") above that, subject to the Terms, conditions and limitations stated herein, Single Source Roofing will repair any leaks caused by workmanship or Single Source Roofing supplied materials in the Membrane Roofing System at the above building. Single Source Roofing's repair obligations over the life of this guarantee are limited to the Owner's original cost of the Membrane Roofing System installation.

### TERMS, CONDITIONS, LIMITATIONS

1. Owner shall provide Single Source Roofing with written notice within thirty (30) days of the discovery of any leaks in the roofing system.

2. If upon inspection, Single Source Roofing determines that the leaks in the roofing system are caused by defects in the Membrane Roofing System material or workmanship of the Single Source Roofing Installation Team (except as provided in paragraphs No. four (4) and No. five (5)). Owner's remedies and Single Source Roofing's liability shall be limited to Single Source Roofing's repair of the leak subject to the cost limitation set forth above.

3. If upon inspection, Single Source Roofing determines that the leak is excluded under the Terms, Conditions, Limitations set forth below, inspection and repair costs shall be paid by the Owner. Failure by Owner to pay for these costs shall render this Membrane Systems Warranty null and void.

4. The Guarantee shall not be applicable if, in the sole judgement of Single Source Roofing any of the following shall occur:
   (a) The Membrane Roofing System is damaged by natural disasters, including, but not limited to, lightning, gales, hurricanes, tornadoes, and earthquakes, or;
   (b) The Membrane Roofing System is damaged by any acts of negligence, accidents, or misuse, including, but not limited to, vandalism, civil disobedience, or acts of war, or;
   (c) Metal work or other material not furnished by Single Source Roofing used in the roofing system and causes leaks.

5. This Guarantee shall be null and void if in the sole judgement of Single Source Roofing any of the following shall occur:
   (a) If, after installation of the Membrane Roofing System by a Single Source Roofing Installation Team, there are any alterations or repairs made on or through the roof or objects such as, but not limited to, structures, fixtures, or utilities are placed upon or attached to the roof without first obtaining written authorization from Single Source Roofing, or;
   (b) Failure by the Owner or lessee to use reasonable care in maintaining the roof, or;
   (c) Owner fails to comply with every term or condition stated herein.

6. During the term of this Guarantee, Single Source Roofing, its agents or employees, shall have free access to the roof during regular business hours. In the event that roof access is limited due to security or other restrictions, Owner shall reimburse Single Source Roofing for all reasonable costs incurred during inspection and/or repair of the roofing system which are due to delays associated with said restrictions.

7. Single Source Roofing shall have no obligation under the Guarantee until all bills for installation, supplies and service have been paid in full.

8. Single Source Roofing's failure at any time to enforce any of the terms or conditions stated herein shall not be construed to be a waiver of such provision.

9. This Guarantee supersedes and is in lieu of any and all other expressed guarantees that are in conflict with the terms and conditions stated herein.

YOU AGREE SINGLE SOURCE ROOFING ASSUMES NO LIABILITY FOR CONSEQUENTIAL DAMAGES OF ANY KIND WHICH RESULT FROM THE USE OR MISUSE OF THE MEMBRANE ROOFING SYSTEM. THIS IS THE ENTIRE GUARANTEE AGREEMENT AND THERE ARE NO OTHER GUARANTEES OR WARRANTIES EXPRESSED OR IMPLIED.

SINGLE SOURCE ROOFING CORPORATION

By: __Shirley Simpson__

Authorized Signature: _Shirley Simpson_

Title: __National Service Representative__

Date of Issue: __April 30, 1999__

NATIONAL HEADQUARTERS: 1200 McKee Avenue, McKees Rocks, PA  15136

**EXHIBIT**
F

EA 0004



## MEMBRANE MATERIAL WARRANTY

Subject to the following terms and conditions, Single Source Roofing Corporation, (SELLER) warrants to the Buyer that the rubber membrane material (MEMBRANE) sold to the Buyer will be free from manufacturing defects at the time of its delivery to the job site.

If upon inspection by the Seller, the Membrane evidences manufacturing defects, Seller's liability and Buyer's remedies are limited, at Seller's option, to the repair or replacement of the defective Membrane at the F.O.B. point in the original contract of sale.

Seller further warrants that the Membrane material will not prematurely deteriorate to the point of failure because of weathering for a period of <u>Twenty</u> ( 20 ) years from the date of sale if properly maintained and used for the purpose for which the Seller intended.

Buyer shall give Seller notice of a claim under this warranty within thirty (30) days of discovering the premature deterioration of the Membrane.

If upon inspection by the Seller, the Membrane shows premature deterioration because of weathering within the <u>Twenty</u> (20) year period stated herein, Seller's liability and Buyer's remedies are limited at Seller's option to the providing of repair material for the original Membrane or credit to be applied towards the purchase of a new Membrane, the value of these remedies being determined by the Seller based upon the number of remaining months of the unexpired warranty used to pro-rate at the current prices for the Membrane. The maximum pro-rated value allowed by Seller for repair or credit shall not exceed the original Membrane purchase price.

This warranty refers to the Membrane material only. Flashing, adhesives and other accessories contained in a membrane system are not covered by this warranty.

NO REPRESENTATIVE OF THE SELLER HAS AUTHORITY TO MAKE ANY REPRESENTATIONS OR PROMISES EXCEPT AS STATED HEREIN.

THERE ARE NO WARRANTIES EITHER EXPRESSED OR IMPLIED, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, WHICH EXTEND BEYOND THE WARRANTIES CONTAINED IN THIS DOCUMENT. SINGLE SOURCE ROOFING SHALL NOT BE LIABLE FOR ANY INCIDENTAL, CONSEQUENTIAL OR OTHER DAMAGES, INCLUDING, BUT NOT LIMITED TO, LOSS OF PROFITS OR DAMAGES TO THE STRUCTURE OR ITS CONTENTS ARISING UNDER ANY THEORY OF LAW WHATSOEVER.

SINGLE SOURCE ROOFING CORPORATION

By: <u>Shirley Simpson</u>

AUTHORIZED SIGNATURE: <u>Shirley Simpson</u>

TITLE: <u>National Service Representative</u>

DATE OF ISSUE: <u>April 30, 1999</u>

NATIONAL HEADQUARTERS: 1200 McKee Avenue, McKees Rocks, PA 15136

**EXHIBIT**

G

EA 0005

**◈ SingleSource** ROOFING

### MEMBRANE SYSTEMS WARRANTY

Building Owner __Edens & Avant, Inc.__

Address of Building __Acton Plaza Two, Main Street, Acton, MA__

Start Date of Warranty Coverage __May 17, 1999__

Roof Approved By __H. McKown__ _____ Guarantee # __07379__

For a period of __Twenty__ (20) years commencing from the start date of warranty coverage indicated above, Single Source Roofing Corporation ("Single Source Roofing") guarantees to the Building Owner ("Owner") above that, subject to the terms, conditions and limitations stated herein, Single Source Roofing will repair any leaks caused by workmanship or Single Source Roofing supplied materials in the Membrane Roofing System at the above building. Single Source Roofing's repair obligations over the life of this guarantee are limited to the Owner's original cost of the Membrane Roofing System installation.

#### TERMS, CONDITIONS, LIMITATIONS

1. Owner shall provide Single Source Roofing with written notice within thirty (30) days of the discovery of any leaks in the roofing system.

2. If upon inspection, Single Source Roofing determines that the leaks in the roofing system are caused by defects in the Membrane Roofing System material or workmanship of the Single Source Roofing Installation Team (except as provided in paragraphs No. four (4) and No. five (5)). Owner's remedies and Single Source Roofing's liability shall be limited to Single Source Roofing's repair of the leak subject to the cost limitation set forth above.

3. If upon inspection, Single Source Roofing determines that the leak is excluded under the Terms, Conditions, Limitations set forth below, inspection and repair costs shall be paid by the Owner. Failure by Owner to pay for these costs shall render this Membrane Systems Warranty null and void.

4. The Guarantee shall not be applicable if, in the sole judgement of Single Source Roofing any of the following shall occur:
   (a) The Membrane Roofing System is damaged by natural disasters, including, but not limited to, lightning, gales, hurricanes, tornadoes and earthquakes, or;
   (b) The Membrane Roofing System is damaged by any acts of negligence, accidents, or misuse, including, but not limited to, vandalism, civil disobedience, or acts of war, or;
   (c) Metal work or other material not furnished by Single Source Roofing used in the roofing system and causes leaks.

5. This Guarantee shall be null and void if in the sole judgement of Single Source Roofing any of the following shall occur:
   (a) If, after installation of the Membrane Roofing System by a Single Source Roofing Installation Team, there are any alterations or repairs made on or through the roof or objects such as, but not limited to, structures, fixtures, or utilities are placed upon or attached to the roof without first obtaining written authorization from Single Source Roofing, or;
   (b) Failure by the Owner or lessee to use reasonable care in maintaining the roof, or;
   (c) Owner fails to comply with every term or condition stated herein.

6. During the term of this Guarantee, Single Source Roofing, its agents or employees, shall have free access to the roof during regular business hours. In the event that roof access is limited due to security or other restrictions, Owner shall reimburse Single Source Roofing for all reasonable costs incurred during inspection and/or repair of the roofing system which are due to delays associated with said restrictions.

7. Single Source Roofing shall have no obligation under the Guarantee until all bills for installation, supplies and service have been paid in full.

8. Single Source Roofing's failure at any time to enforce any of the terms or conditions stated herein shall not be construed to be a waiver of such provision.

9. This Guarantee supersedes and is in lieu of any and all other expressed guarantees that are in conflict with the terms and conditions stated herein.

YOU AGREE SINGLE SOURCE ROOFING ASSUMES NO LIABILITY FOR CONSEQUENTIAL DAMAGES OF ANY KIND WHICH RESULT FROM THE USE OR MISUSE OF THE MEMBRANE ROOFING SYSTEM. THIS IS THE ENTIRE GUARANTEE AGREEMENT AND THERE ARE NO OTHER GUARANTEES EXPRESSED OR IMPLIED.

SINGLE SOURCE ROOFING CORPORATION

By: __Shirley Simpson__

Authorized Signature: __Shirley Simpson__

Title: __National Service Representative__

Date of Issue: __May 21, 1999__

NATIONAL HEADQUARTERS: 1200 McKee Avenue, McKees Rocks, PA 15136

**EXHIBIT**

tabbies __H__

SingleSource 00462



## MEMBRANE MATERIAL WARRANTY

Subject to the following terms and conditions, Single Source Roofing Corporation, (SELLER) warrants to the Buyer that the rubber membrane material (MEMBRANE) sold to the Buyer will be free from manufacturing defects at the time of its delivery to the job site.

If upon inspection by the Seller, the Membrane evidences manufacturing defects, Seller's liability and Buyer's remedies are limited, at Seller's option, to the repair or replacement of the defective Membrane at the F.O.B. point in the original contract of sale.

Seller further warrants that the Membrane material will not prematurely deteriorate to the point of failure because of weathering for a period of __Twenty (20)__ years from the date of sale if properly maintained and used for the purpose for which the Seller intended.

Buyer shall give Seller notice of a claim under this warranty within thirty (30) days of discovering the premature deterioration of the Membrane.

If upon inspection by the Seller, the Membrane shows premature deterioration because of weathering within the __Twenty__ (20) year period stated herein, Seller's liability and Buyer's remedies are limited at Seller's option to the providing of repair material for the original Membrane or credit to be applied towards the purchase of a new Membrane, the value of these remedies being determined by the Seller based upon the number of remaining months of the unexpired warranty used to pro-rate at the current prices for the Membrane. The maximum pro-rated value allowed by Seller for repair or credit shall not exceed the original Membrane purchase price.

This warranty refers to the Membrane material only. Flashing, adhesives and other accessories contained in a membrane system are not covered by this warranty.

NO REPRESENTATIVE OF THE SELLER HAS AUTHORITY TO MAKE ANY REPRESENTATIONS OR PROMISES EXCEPT AS STATED HEREIN.

THERE ARE NO WARRANTIES EITHER EXPRESSED OR IMPLIED, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, WHICH EXTEND BEYOND THE WARRANTIES CONTAINED IN THIS DOCUMENT. SINGLE SOURCE ROOFING SHALL NOT BE LIABLE FOR ANY INCIDENTAL, CONSEQUENTIAL OR OTHER DAMAGES, INCLUDING, BUT NOT LIMITED TO, LOSS OF PROFITS OR DAMAGES TO THE STRUCTURE OR ITS CONTENTS ARISING UNDER ANY THEORY OF LAW WHATSOEVER.

SINGLE SOURCE ROOFING CORPORATION

By: __Shirley Simpson__

AUTHORIZED SIGNATURE: __Shirley Simpson__

TITLE: __National Service Representative__

DATE OF ISSUE: __May 21, 1999__

NATIONAL HEADQUARTERS: 1200 McKee Avenue, McKees Rocks, PA 15136

**EXHIBIT**

_I_

tabbies

SingleSource 00464